# IN THE SUPERIOR COURT OF GUAM

BY: _____

| | |
|---|---|
| L.A., a minor person with a disability by and through her parent,<br>G.D., a minor person with a disability by and through his parent,<br>E.R., a minor person with a disability by and through his parent,<br>N.K., a minor person with a disability by and through her parent,<br>N.K., a minor person with a disability by and through her parent,<br>E.G., a minor person with a disability by and through his parent,<br>F.A., a minor person with a disability by and through her parent,<br>J.B., a minor person with a disability by and through his parent,<br>J.Y., a minor person with a disability by and through his parent, and<br>M.R., a minor person with a disability by and through his parent,<br><br>Plaintiffs,<br><br>vs.<br><br>Kenneth Erik Swanson, Ph.D., in his official capacity as Superintendent, Guam Department of Education, et al.,<br><br>Defendants. | CIVIL CASE NO. CV0464-23<br><br><br>DECISION AND ORDER GRANTING MOTIONS TO DISMISS |

In this lawsuit by students seeking redress against the Guam Department of Education's Superintendent and Board members ("GDOE"), the Court reviews whether certain students' failure to file administrative review claims deprives it of subject matter jurisdiction. The Court determines that Guam law requires students to avail of an administrative review process as a prerequisite to filing a lawsuit against GDOE. The Court, therefore, has no choice but to dismiss

# ORIGINAL

the claims of those students who did not first seek administrative review.

## I.   BACKGROUND

### A. L.A. and G.D. filed administrative claims.

On June 26, 2023, through their attorneys, Guam Legal Services Corporation (GLSC), Plaintiffs L.A. and G.D. each filed Government Claims Act claims with the Office of the Attorney General ("OAG") and GDOE. Decl. Counsel (Apr. 5, 2024); Doc. Submission, Exs. U, V (Sept. 11, 2023). The claims sought injunctive relief under the Every Child Is Entitled to an Adequate Public Education Act, Guam Public Law No. 28-45.[1] L.A. and G.D. claimed that their schools—Agueda I. Johnston Middle School and Oceanview Middle School—maintained unsafe and unsanitary learning environments. L.A. further sought relief for GDOE's failure to provide her with a certified teacher.

Within two days, Assistant Attorney General ("AAG") Graham Botha acknowledged receipt of the claims, but asserted that they were procedurally deficient. *Id.* Attorney Daniel Somerfleck of GLSC contends that phone conversations then ensued between himself and AAG Botha to discuss the alleged defects and potentially the lack of jurisdiction to review the claims. Attorney Somerfleck wrote a letter dated July 7, 2023, in which he confirms the defects had been addressed. *Id.* Attorney Somerfleck received no further correspondence from the OAG and no response at all from GDOE. *Id.*

### B. L.A., G.D., and others file a lawsuit.

In August 2023, Plaintiffs L.A. and G.D. sued GDOE, alleging it did not meet the Adequate Education Act's mandates.[2] Compl. (Aug. 11, 2023). L.A. and G.D. asserted that, in

---

[1] Also referenced herein as the "Adequate Education Act."

[2] The original Complaint and subsequent complaints list fourteen enumerated mandates under the Act, implying a broad range of violations occurred within the subject schools.

ORIGINAL

compliance with the Act, they also filed administrative claims with the OAG and the acting Superintendent.

Four months later, Plaintiffs filed a Second Amended Complaint, adding eight more Plaintiffs--all GDOE special education students seeking relief under the Adequate Education Act. The additional Plaintiffs admit they did not lodge administrative claims on the grounds of futility, "[b]ased upon the nature of relief sought, the positions of the Defendants currently in this matter, . . . the complete lack of response to the claims from the Defendants and A.G. Graham Botha only challeng[ing] the format of the claim." Second Am. Compl. ¶ 31 (Jan. 22, 2024).

Defendants filed two motions asking the Court to dismiss the eight additional Plaintiffs who did not file administrative claims and therefore failed to exhaust their administrative remedies.[3] Defs.' Mot. Dismiss (Mar. 8, 2024); Defs.' Mot. Dismiss (May 15, 2024). Defendants also ask the Court to reject G.D.'s claim due to a lack of conciseness and to prevent Plaintiffs from asserting claims on behalf of similarly situated individuals.

Plaintiffs respond that exhausting the administrative process is futile, to which they contend the Attorney General conceded when responding to the first two Plaintiffs' claims. The eight additional Plaintiffs further assert that the Government Claims Act route applies to damages claims, which they are not asserting. Finally, Plaintiffs argue the doctrine of "vicarious exhaustion" saves those who opted not to file a claim.

## II.  LAW AND DISCUSSION

### A. The Organic Act and the Adequate Education Act.

---

[3] Defendants also argue that GDOE has not waived its sovereign immunity. Because the Court grants the motions due to the failure to exhaust administrative remedies, it declines to reach the sovereign immunity argument. Nonetheless, the Court notes that sovereign immunity does not apply to claims for injunctions—the sole relief sought here. *See Gange v. Gov't of Guam*, 2017 Guam 2 ¶ 15.



The Organic Act—Guam's constitution[4]—states that "the Government of Guam shall provide an adequate public educational system . . . and to that end shall establish, maintain, and operate public schools according to the laws of Guam." 48 U.S.C.A. § 1421g(b). Moreover, the Organic Act lists compulsory education under its Bill of Rights. 48 U.S.C.A. § 1421(r).

In 2005, the Legislature analogized the right to an adequate public education to a constitutional civil right. Guam Pub. L. 28-45:3 (June 13, 2005). It created the "Every Child is Entitled to an Adequate Public Education Act" to reflect the prioritization of the education of Guam's children. P.L. 28-45:2. To that extent, the Legislature enacted a mechanism that "gives school children access to the courts to vindicate that right." P.L. 28-45:3.

First, it granted students standing[5] to seek an injunction[6] against the government and an Executive Branch official who fails to provide an adequate public education. P.L. 28-45:16 (7 GCA § 12108.1(a)), 28-45:19 (19 GCA § 1116). Second, before a student can sue in court, the Act required the student to file a claim "in the manner required by" portions of the Government Claims Act. P.L. 28-45:16 (7 GCA § 12108.1(b)). The claim had to be lodged with the Attorney General and a department head. *Id.* The claim then ripened thirty days thereafter; in other words, the OAG and GDOE had up to thirty days to take action in response to the claim before

---

[4] *In re: Request of Lourdes A. Leon Guerrero, I Maga'hågan Guåhan, Relative to the Power of the Executive Branch to Establish, Maintain, and Operate Quarantine Facilities in Guam and to Promulgate Quarantine and Sanitation Regs. for the Protection of Guam Ag. Importation and Spread of Disease*, 2021 Guam 6 ¶ 34.

[5] Standing is a threshold jurisdictional matter. *Benavente v. Taitano*, 2006 Guam 15 ¶ 17. Because the standing granted to school children is provided by law, it falls under a category of standing known as "statutory standing." The Guam Supreme Court directs that when interpreting provisions conveying statutory standing, the court's analysis begins with the plain language of the relevant statute. *Id.* ¶ 19.

[6] The Legislature made clear that claims filed under the Act may only seek injunctive relief. P.L. 28-45:16-17.



the student could file a lawsuit. *Id.* Third, the Act established a statute of limitations of six months. P.L. 28-45:15 (7 GCA § 11311).

### B. The eight additional plaintiffs were required to exhaust their administrative remedies.

The eight additional Plaintiffs concede they did not follow the Adequate Education Act's administrative review route. They claim that filing the claims was useless because, in addition to L.A. and G.D. receiving no response from the OAG or GDOE, AAG Botha had indicated verbally the OAG did not have jurisdiction to review the claim.

Guam has long upheld the administrative exhaustion doctrine, which "provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Barrett-Anderson v. Camacho*, 2015 Guam 20 (citing *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006)). In a recent opinion, the Guam Supreme Court explored the futility exception to the administrative exhaustion doctrine. *Story-Bernardo v. Government of Guam*, 2023 Guam 27, involved government employees seeking double pay during the COVID-19 pandemic. The plaintiffs claimed that exhausting administrative remedies was futile because the Governor, the Department of Administration Director, and the Attorney General had declared that double pay provisions in administrative rules were not applicable during the public health emergency. They further claimed that the Civil Service Commission was closed, making a review of employee grievances impracticable.

The Guam Supreme Court determined the government officials' declarations did not mean administrative review efforts were futile. "Futility is a narrow exception that applies only if the party invoking it can positively state that the administrative agency has declared what its ruling will be in a particular case." *Id.* ¶ 23. The agency, in other words, must have already "made it clear" that pursuing the administrative process would be futile—which the CSC had not



done. *Id.* ¶ 22. In contrast, the employees' "preconception of the futility of administrative action does not permit" the administrative process to be bypassed. *Id.*

Plaintiffs here have not shown that either the OAG or GDOE had "made it clear" that administrative review would be futile. In fact, the record reflects no statement from either body. Plaintiffs have furnished hearsay statements, such as an agreement by AAG Botha that the OAG lacked jurisdiction to review Adequate Education Act claims, but that single unverified statement alone cannot rise to the level of a definitive agency position. The silence of both agencies as to L.A. and G.D.'s claims did mean that their claims ripened thirty days after filing. 7 GCA § 12108.1(b). But this Court cannot equate such silence to a definitive statement by the OAG or GDOE as to the futility of other students' efforts to seek mandatory administrative review.

Plaintiffs furthermore assert that the Government Claims Act cannot provide a remedy because it is intended to evaluate damages rather than injunctive relief. In analyzing this argument, the Court must again use plain language in interpreting the Adequate Education Act. The Act notably does not adopt the Government Claims Act in full, which shows that the Legislature was careful in its intention and application. This could be seen, for example, in the second half of the standing clause, which says that a claim can be filed once thirty days have passed since the filing of the claim. *Id.* This contrasts with the usual eighteen months in which the government can evaluate a typical government claim before it ripens. *See* 5 GCA § 6106(b).

What this Court gleans from the Adequate Education Act's administrative process established by the Legislature is that it wanted to provide students quick access to remedies, while still allowing an administrative process for GDOE to evaluate claims. The point of the administrative review, after all, is to allow agencies to exercise their expertise to address disputes. As stated by another court,



> Exhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical education issues, furthers development of a complete factual record, and promotes judicial efficiency by giving those agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*S.W. by J.W. v. Warren*, 528 F. Supp. 2d 282, 293 (S.D.N.Y 2007); *see also Clint Independent School Dist. v. Marquez*, 487 S.W.3d 538 (Tex. 2016). In the area of education, other courts have remarked that "judges are not trained educators and we are cautioned not to substitute our own notions of sound educational policy for those of the school authorities which we review." *J.B. ex rel. Bailey v. Avilla R-XIII School Dist.*, 721 F.3d 588, 594 (8th Cir. 2013).

The Court finds the Adequate Education Act's administrative process to be quick and reasonable, and specifically developed to address injunctive relief. By their silence, the OAG and GDOE have appeared to have waived their opportunity to offer relief for L.A. and G.D. at the agency level. However, no government body has "made it clear" that the review process would be handled the same way for the other Plaintiffs attending other schools and presenting other complaints separate from L.A. and G.D. Instead, the choice not to pursue administrative remedies appears to have derived from GLSC's preconception that the process would be useless, based on the agencies' handling of their other clients' claims.

### C. The Adequate Education Act does not violate the students' constitutional rights.

Plaintiffs further argue that they have constitutional standing because the Organic Act guarantees the right to an adequate education.

The Court first addresses GDOE's response to this argument, which is that the right contained within the Organic Act exists only as further substantiated through the laws of Guam, such as the Adequate Education Act. GDOE grounds this argument in the Organic Act's particular phrasing that the Government shall provide an adequate educational system "and to



that end shall establish, maintain, and operate public schools *according to the laws of Guam.*" 48 USC § 1421g(b) (emphasis added).

The Court disagrees, as does the Legislature. The Adequate Education Act recognizes that an adequate education in Guam is a constitutional civil right. Moreover, a majority of states with constitutional language similar to the Organic Act recognize the right to an adequate or efficient education as a constitutional right.[7]

Even if the right to an adequate education is a constitutional civil right, the question remains whether the Legislature can require an initial administrative review over that right. In examining this question, the Court recognizes that legislative enactments are presumed to be constitutional. *In re Request of L. Leon Guerrero*, 2021 Guam 6 ¶ 24. Binding authorities direct this Court to "construe a statute to avoid organic infirmities." *In Re: Request of I Maga'låhen*

---

[7] *See* Ala. Const. Art. XIZ § 256; Ariz. Const. Art. 11 § 1A; Conn. Const. Art. 8 § 1; Del. Const. Art. X § 1; Ky. Const. § 183; Minn. Const. Art. 13 § 1; Miss. Const. Art. 8 § 201; Mont. Const. Art. 10 § 1(3); N.H. Const. Pt. 2 Art. 83; N.J. Const. Art. 8 § 4 ¶ 1; N.Y. Const. Art. 11 § 1; N.C. Const. Art. IX § 2; N.D. Const. Art. VIII § 1; Pa. Const. Art. 3 § 14; S.D. Const. Art. 8 § 1; Tenn. Const. Art. 11 § 12; Vt. Const. § 68; Va. Const. Art. 8 § 1; W. Va. Const. Art. 12 § 2; Wis. Const. Art. 10 § 3; Wyo. Const. Art. 7 § 1. For supporting caselaw in these jurisdictions, see *Pinto v. Ala. Coal. for Equity*, 662 So. 2d 894 (Ala. 1995); *Hull v. Albrecht*, 950 P.2d 1141 (Ariz. 1997); *Lake View Sch. Dist. No. 25 of Phillips Cty. v. Huckabee*, 91 S.W.3d 472 (Ark. 2002); *Conn. Coal. for Justice in Educ. Funding, Inc. v. Rell*, 176 A.3d 28 (Conn. 2018); *Delawareans for Educ. Opportunity v. Carney*, 199 A.3d 109 (Del. Ch. 2018); *Rose v. Council for Better Educ., Inc.*, 790 S.W.2d 186 (Ky. 1989); *Cruz-Guzman v. State*, 916 N.W.2d 1 (Minn. 2018); *Clinton Mun. Separate Sch. Dist. V. Byrd*, 477 So. 2d 237 (Miss. 1985); *Contoocook Valley Sch. Dist. v. State*, 251 A.3d 270 (N.H. 2021); *Claremont Sch. Dist. v. Governor*, 703 A.2d 1353 (N.H. 1997); *Abbott by Abbot v. Burke*, 693 A.2d 417 (N.J. 1997); *Campaign For Fiscal Equity, Inc. v. State*, 295 A.D.2d 1, 744 N.Y.S.2d 130 (2002), *aff'd as modified and remanded*, 100 N.Y.2d 893, 801 N.E.2d 326 (2003); *Hoke Cty. Bd. of Educ. v. State*, 879 S.E.2d 193 (N.C. 2022); *Bismarck Pub. Sch. Dist. No. 1. v. State By and Through N.D. Legis. Assembly*, 511 N.W.2d 247 (N.D. 1994); *Sch. Dist. Of Wilkinsburg v. Wilkinsburg Educ. Ass'n*, 667 A.2d 5 (Pa. 1995); *Davis v. State*, 804 N.W.2d 618 (S.D. 2011); *Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868 (M.D. Tenn. 2013); *Vitale v. Bellows Falls Union High Sch.*, 293 A.3d 309 (Vt. 2023); *Scott v. Commonwealth*, 443 S.E.2d 138 (Va. 1994); *Bd. of Educ. of Cty. of Kanawha v. W.V. Bd. of Educ.*, 639 S.E.2d 893 (W. Va. 2006); *Vincent v. Voight*, 614 N.W.2d 388 (Wis. 2000); *Campbell Cty. Sch. Dist. v. State*, 907 P.2d 1238 (Wyo. 1995).



*Guåhan Eddie B. Calvo Relative to Interp. and Appl. of Organic Act § 1423b and What Constitutes the Aff. Vote of the Members of I Liheslaturan Guåhan*, 2017 Guam 14 ¶ 33. No party has challenged the organicity of the Adequate Education Act, and more particularly, its provisions on standing for students; thus, the Court continues to presume it to be in line with the Organic Act.

Furthermore, other courts recognize that a Legislature can impose reasonable conditions upon one's enforcement of a constitutional right, as long as such regulations do not materially impair the right. *Davis v. State*, 443 N.W.2d 707, 709 (Iowa 1989); *Muller v. Muller*, 4 Cal. Rptr. 419, 422 (Cal. App. 1960) (a "constitutional right is always subject to reasonable statutory limitations"). The Texas Supreme Court examined this issue specifically within the context of the right to an adequate education. In *Clint Independent School District*, 487 S.W.3d at 538, parents sued the school district for violations of the Texas Constitution and sought declaratory and injunctive relief. The court first recognized its long-standing holding that persons complaining about the school system must exhaust their administrative remedies if such complaints were those the Texas Legislature authorized the administrative review body to evaluate. *Id.* at 546. If a student filed a claim under the Texas Constitution but also under an area regulated by Texas school laws, administrative exhaustion was still required. *Id.* at 553. On the other hand, if the claim did not allege a violation of any Texas school laws, exhaustion would not be necessary. *Id.* at 552. The court also looked to the Texas Legislature's extensive system of standards, sanctions, and rewards to compel school districts to provide a constitutionally adequate public education. "In short, the school district has a duty to provide students a constitutionally adequate public education not because the Constitution compels it to do so but because the 'school laws of this state' compel it to do so." *Id.* at 554.



This is the same situation here. While the Organic Act instituted a constitutional right to an adequate education for Guam's students, the Adequate Education Act empowers students and defines that constitutional right. Even though they reference the Organic Act's language, Plaintiffs use the Adequate Education Act's criteria to guide their presentation of their case. For example, Plaintiffs seek an injunction for GDOE to provide certified teachers; properly air-conditioned and ventilated classrooms; potable water sufficient for drinking; flushable toilets, clean restrooms, dining areas and classrooms; a "healthful, safe, sanitary learning environment;" and at least 180 instructional days per school year, among other relief. *See* Ex Parte Mot. Temp. Restraining Order (Aug. 11, 2023); Second Am. Compl. These specific items derive from the Adequate Education Act, rather than the Organic Act. As in the Texas case, Plaintiffs' educational constitutional rights here are not the center of their case; rather, Plaintiffs emphasize the enforcement of the mandates within the Adequate Education Act. Because Plaintiffs' claims overwhelmingly derive from the Adequate Education Act, the Court finds that administrative exhaustion cannot be excused even though Plaintiffs also have an ancillary constitutional claim.

### D. Plaintiffs have not demonstrated the applicability of vicarious exhaustion.

Plaintiffs next ask the Court to consider the eight additional Plaintiffs' claims as exhausted vicariously through L.A. and G.D. Plaintiffs point to a footnote in *Story-Bernardo* whereby the Guam Supreme Court briefly mentioned the doctrine of vicarious exhaustion. 2023 Guam 27 ¶ 20 n.4.[8] Defendants respond that the doctrine applies only to class action cases.

---

[8] For vicarious exhaustion, *Story-Bernardo* cites *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014). *Barkely* discusses the administrative exhaustion of employment discrimination claims with the Equal Employment Opportunity Commission. In determining that a group of individuals had not exhausted their individual administrative claims, *Barkley* points out that Congress instituted a mechanism whereby a class of persons can collectively exhaust their administrative remedies—a process unutilized by the group. Again,



ORIGINAL

While courts mainly consider vicarious exhaustion in class actions, at least one court has set forth a test outside of a class action context. In *Foster v. Gueory*, 655 F.2d 1319 (D.C. Cir. 1981), the court permitted intervenors into an employment discrimination case to avail of vicarious exhaustion. The similarity of the claims is the "critical factor:" "Where the two claims are so similar that it can fairly be said that no conciliatory purpose would be served by filing separate . . . charges, then it would be 'wasteful, if not in vain'" to require separate administrative filings. *Id.* at 1322 (citing *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968)). In contrast, "where the two complaints differ to the extent that there is a real possibility that one of the claims might be administratively settled while the other can be resolved only by the courts," then exhaustion cannot be done vicariously. *Foster*, 655 F.2d at 1322.

Plaintiffs' discussion of vicarious exhaustion was brief and did not reference or explore the test regarding the similarity of claims. In applying that test, it is obvious to the Court that the various Plaintiffs are similar in that they are special education public school students. The OAG's and GDOE's complete lack of response to L.A. and G.D. also suggests that it may be wasteful and in vain for further students to attempt the administrative process.

However, Plaintiffs' individual circumstances pose significant differences as well. L.A. and G.D. are middle school students at two separate campuses. The eight additional Plaintiffs are elementary school students, middle school students at other campuses, and one high school student. Some of the Plaintiffs alleged their schools had not received or passed sanitary inspections; others make no mention of inspections, implying their schools may have passed.

---

here in Guam, the Adequate Education Act lacks a similar method for multiple individuals to exhaust their claims as a class or group.



Some Plaintiffs allegedly lack sufficient instructional days; others do not. Finally, some—but not all—complain of a lack of a certified teacher. Because of the wide range of issues presented by Plaintiffs, GDOE's approach to each student's individual needs and the campuses may likely differ. Finally, the Court notes that the eight additional Plaintiffs sought relief six months after L.A. and G.D.—also during a different school year—and months after the litigation of L.A. and G.D.'s cases begun vigorous litigation.

These differences in student needs, location, and timing lead to the possibility that any of the eight additional Plaintiffs could have received a different administrative result had they presented their administrative claims before filing a lawsuit. For those reasons, vicarious exhaustion does not apply.

### E. G.D.'s claim survives dismissal.

As to G.D.'s administrative claim, Defendants complain that judicial review is barred because the claim did not comply with the requirement of being concise, in violation of 5 GCA § 6201(c). If Defendants had issues about the contents of the administrative claim, the appropriate time to address such concerns would have been during the administrative review process. Instead, Defendants sat on their hands and ignored G.D.'s administrative claim.

Beyond proffering an untimely argument, GDOE also fails to suffer any prejudice. G.D.'s claims have been before this Court for over a year, and the parties have actively engaged in discovery. This means that GDOE has now had ample time to understand the basis of G.D.'s adequate education arguments. Because any lack of conciseness has now been cured through the pleading and discovery process, and because GDOE waived any lack of conciseness by not responding to the administrative claim and allowing it to ripen, the Court finds dismissal on these grounds to be inappropriate.



**F. The Court has broad authority to grant injunctive relief that will benefit similarly situated students.**

Finally, Defendants move the Court to dismiss any claims for relief filed by Plaintiffs on behalf of "similarly situated students." Defendants point to the lack of any broad relief under the Adequate Education Act; in response, Plaintiffs urge the Court to utilize broad, flexible powers given the nature of the dispute.

Again, the Court looks to the plain language of the Adequate Education Act. Whether by oversight or by intention, the law makes no provision for a student or group of students to assert claims on behalf of others. The standing provision explicitly allows standing for a student to sue because the government or a government officer failed to provide an adequate public education "to *that* public school student." 7 GCA § 12108.1(a) (emphasis added). Nonetheless, the Court may grant injunctive relief when "necessary to prevent a multiplicity of judicial proceedings." 7 GCA § 20302. In other words, while standing may not be conferred upon one student to represent others, the Court may consider injunctive relief with broader application.

## III.   CONCLUSION

The eight additional Plaintiffs failed to file administrative claims—a requirement imposed by the Adequate Education Act. Accordingly, the Motions to Dismiss their claims are GRANTED.[9] L.A. and G.D.'s claims brought in this case shall proceed to trial,[10] if not earlier disposed of through currently pending dispositive motions. Finally, the remaining Plaintiffs may

---

[9] The Court does not take this ruling lightly; it recognizes that the short statute of limitations established by the Adequate Education Act may render these students' claims time-barred. While irreparable injury and public policy could also serve as administrative exhaustion exceptions and could possibly have applied here, Plaintiffs did not offer up those exceptions and they do not appear to be recognized under Guam law.

[10] The hearing on a preliminary injunction was halted pending the Court's disposition of the issues discussed herein. The hearing shall now be joined with the trial, which is set for November 12, 2024.

ORIGINAL

not assert claims on behalf of similarly situated students, but that does not prevent the Court from issuing injunctive relief that may alleviate future claims brought by other students.

**SO ORDERED, 10 September 2024.**

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys: Daniel S. Somerfleck, Esq., and Philip Tydingco, Esq., Guam Legal
         Services Corporation, for Plaintiffs
Jesse Nasis, Esq., Matthew E. Wolff, Esq., and James Stake, Esq., Guam Department of
         Education, for Defendants


ORIGINAL